Good morning everyone and welcome. The panel has before it a total of six cases, two of which are being submitted today solely on the briefs, namely Appeal No. 05-1574, Motionless Keyboard v. Microsoft, and Appeal No. 06-3071, Love v. Department of Justice. Four cases on the argument list, the first of which is Appeal No. 05-1451, USA Video Technology v. Movielink. Good morning, please proceed. Good morning, Your Honors. My name is Corby Vowell. I represent the appellant, USA Video Technology Corporation, and there is one single issue on this appeal, and that is whether in the Movielink system the distribution interface initiates the connections with the remote locations. Isn't the question actually whether there's sufficient evidence to support that proposition to create a triable issue? Well, that's correct. Can you pinpoint exactly what part of the expert's report supports what you just said? Certainly, Your Honor. Appendix A-1938, there is a page of the expert's report which sets forth two connections, or the expert's description of two connections. Connections or messages? They are, in fact, connections. There is a first connection that is at the TCP level, or Transmission Control Protocol level, and then there is a second connection which is at a higher layer protocol at the HTTP level, Hypertext Transfer Protocol level, and that is called an HTTP session. So both of those connections are involved in the transmission of a movie in the Movielink system. I don't understand quite what you're saying. Are you saying there are two parallel links that operate at the same time? Or are you saying there are two non-parallel links that each do different things? There are two parallel links. That is correct. Between what and what? Between the CDS server, the server that Movielink operates on. Well, I thought we only cared about the link that has at one of its ends the customer. I thought the issue was when the movie comes to the customer, is it coming over the same link that the customer initiated at the start of the sequence, or does the movie come over a different link started up by the server, not the original link started up by the customer? It is the latter, and if I can refer you to our opening brief, page 7, figure 2, it gives an overview diagram of the Movielink system. And in that diagram you'll see a number of components listed there in the diagram. On the right-hand side you'll see a depiction of the user's computer, which has a numeral 4 there, which operates a typical internet browser, and also the Movielink manager software that resides on the user's computer. The first thing that happens in this system is that the user, running their browser, logs onto the website of Movielink and orders a movie. Is that the first connection? It is a connection. It's not one of the two connections. Is it the first connection? It is a first connection, yes. It is a first connection. So if one wanted to read initiate a connection as meaning the first connection, that would be it? Well, except for the fact that in all of the prior art systems and in the patent, the very first initiating occurrence in one of these systems is that the user orders a movie. There's no question, even the file history is clear about that. The difference here is that once you've ordered that movie, then where that movie comes from and the connection over which that movie is downloaded, that's the issue here. Downloaded to the user's computer? That's correct. So what happens here is when the user connects to the web server and orders the movie, the next thing that occurs is that the web server communicates with box number 5, the content delivery router. Do you consider that initiating a connection? Not that particular step. It's what occurs next that is initiating the connection. How do we know which step initiates a connection? I mean, you picked one or two or several as initiating a connection. The trial court picked something different as initiating a connection. Since your claim focuses on initiating a connection, how do we know which connection is the right one to initiate? And I believe that is a fact issue that should be resolved by the juries, is which specific connection we're talking about. That's not a fact issue. That's a question of claim construction. Well, the court did construe only one term, initiates, and the trial court just construed that as begins. And I don't believe that the parties are in dispute as to the connection between the particular CDS server that's selected and the user's computer. It's really an issue of who initiated that connection. So there's essentially two opposing views here. It's clear that the underlying technology, the underlying TCP and HTTP technology, well, let me back up for a minute and see if I can explain this a little clearer. After that first initial message that goes from the user's computer to the web server to order the movie, the very next thing that happens is that the MovieLink system determines which server is going to download this movie. Well, let me interrupt. Meanwhile, what's happened to the link set up by the user's computer? Is that cut off at that point? That link is still in existence. That's correct. The TCP connection is still in existence at that point. And it's continually in existence through the whole sequence of events? No. That link is in existence until the MovieLink server or content delivery router sends an HTTP redirect command back to the user's computer. Telling them which CDS to go to? That's correct. What link is the server talking over, so to speak, at that point? At that time, it's talking over that first TCP connection. Okay. And then what happened? And then when the content delivery router sends that HTTP redirect command back to the user's computer, it directs the user's computer to then connect to the particular CDS that is the most convenient for that user to download the movie from. So, for example, if the user were in Washington, D.C., it would likely be a server somewhere closer to this area so that you're not having to download. Well, is your point that since the second link, I'll call it, is set up automatically through the user's computer because of a command that starts at the server, that it's correct to conclude that the server is initiating the connection rather than the user's computer? That's correct. Because that is the command that programs that computer or instructs that computer. It essentially creates the connection. Is that what you mean by an HTTP session? No. That's a separate connection. What happens there is once there is a TCP connection, let me back up a minute, the redirect command going back to the user's computer, when that command goes back to the user's computer, a second TCP connection is created between the user's computer and the particular CDS it issued. Okay. Then at that time... You don't consider that initiating a connection, however? I do consider the redirect command instructing that. But you consider the server's instruction back to the remote, the user, as a connection, initiating a connection. But when the remote responds by now going to the CDS, you don't consider that a connection? Well, I consider that a part of the process of the connection. Yes, it's communicating over that connection that was set up. Let me ask you a question that gets to the heart of this as far as I can see. Suppose that instead of doing this over the Internet, this is highly improbable, but it would help me understand the sequence. Instead of sending back to the user's computer the appropriate address for the server that is to be used to conduct the download, instead a person got on the phone and called the user and said, this is the URL for the particular server that you are to use. And that the consumer then input that address into the consumer's own computer and sent that on to the appropriate server. Would you say under those circumstances that the central, in this case operator, had initiated the connection? I would think that's a slightly different case than what we have here. Well, but how would you analyze that? Is that an initiation of the connection? Because it was necessary in order for the connection to be done,  It certainly is, as you mentioned, it certainly is necessary for that connection to be created. And it starts that change. So is that your concept of initiation is what I'm trying to get at? Yes. So that telephone call would initiate, in your view, the connection? Yes. Let me reduce Judge Bryson's question even to simpler terms so I can understand it. What I understand you to be saying is if Judge Bryson calls me up on the telephone and tells me to call Judge Plager and gives me Judge Plager's phone number, that when I pick up the phone and dial Plager's phone number, the call was actually initiated by Bryson? Well, I think it's – to bring it back to the technology at issue here, it's slightly different. No, no, no. I want you to answer my simplistic hypothetical before you talk about the technology. Certainly. I think in that instance we're further away from a situation where you could say that the original call giving you the other number is, in fact, initiating that connection. If there are ways by which – Well, what's the difference between my hypothetical about Bryson giving me Plager's phone number, which I then dial, and you agree that it's not sensible in that circumstance to say that the call to Plager was initiated by Bryson, who just gave me Plager's phone number? If that's not initiation, then why in this case is it initiation? Because in this case, in the technology at hand here, the HTTP redirect command automatically instructs that connection to be created. But you just said, instructs that connection to be created. You used the word created, but if we simply use the word created and use a slightly different word, initiated, then we conclude that it is instructing the initiation of a connection. Ergo, it is not itself the initiation of the connection. That's the problem that it seems to me is presented by this case. Well, even in the user's computer, it just executes yet another command at the physical level that actually creates a connection. So the flip side of this is that what we've been talking about so far is just one of the connections. That's the TCP connection. There's also, and this is, as I mentioned, at A-1938 of Dr. Bettman's expert report, the second connection is the HTTP session. That is, after this TCP connection is created, there is an HTTP session that is physically created by the server. Is this now a third link? It would be considered a third link. The first link opens up and then goes away after that redirect command. And then the second link would be considered the TCP connection that we've just been speaking about. And then I would consider the third link to be the HTTP session that both sides agree is a connection. When the HTTP session begins, does it ride on the same signal as the TCP signal? Well, the information going back and forth does get transmitted over that TCP connection. But it is essentially a higher layer protocol over that TCP connection. But the TCP connection already exists for the HTTP session to ride on, doesn't it? That's correct. Do you disagree with the trial court's view that initiates means begins? I take it not. No, we do not. We think that that construction is consistent with the patent and we do not have a problem with that construction. It's simply the application of that construction. Would you accept that connection means an electronic pathway? I believe that it's broader than that. Certainly the claim construction offered by the appellant in the district court was essentially an association between two inputs. And that's the issue is that the TCP connection is more of a physical connection and then there is a logical connection between the two computers that is created on top of that. Where do we look to find in the patent some sort of implied or explicit definition that connection doesn't mean the physical pathway, it means some sort of logical relationship? Where do we find that? That is something that was not construed by the district court. In the patent itself, there is... No, but where are you finding it? You're telling me that's the right way to read the word connection in this patent because you say so. I can't accept it because you say so. You've got to point to something in the patent that makes that the adopted definition. Certainly the experts have testified relating to that issue. I'm not any more interested in their opinion than your opinion unless it can be traced back to the patent document. Well, and in the patent, it uses the term connection consistent with its ordinary meaning in the art, which would be simply that there is some association between two endpoints on a network, and that's where the definition comes from. I do have it correct that the trial judge thought connection meant physical connection. Yes, and there are, in fact, I mean the HTTP session does, in fact, create a physical connection. It's at a next higher level, but it does create a physical connection. When you say next higher level, you're talking about something having to do with the content of the communication? It's the same electronic pathway, but it's in a fancier language? Is that what you're saying? No, it's actually a different connection because the underlying TCP connection can go away and that session remains, and then another TCP connection can be created to communicate physically between those two computers, and that HTTP session connection remains to be able to coordinate communications and remember variables and other information. At the bottom, is your core contention that there's a triable issue here about how the accused product works, and therefore there should have been a trial because there was sufficient evidentiary conflict, or are you disagreeing with the essential definition by Judge Jordan of the word initiate or the word connection or both? Is it claim construction or is it a material dispute, genuine dispute of material fact? It is a genuine dispute of material fact. Do you accept his claim construction then? You're willing to live with his claim construction? Yes, we are. All right, well that helps me some. I think I may have overstepped my time. You did and we'll give you back two minutes of rebuttal and we'll hear from Mr. Olson. Thank you, Your Honor. Thank you, sir. Mr. Olson. Yes, Your Honor. In response to the questions that have been posed, I think one of the ways to think about this is in the context of a switched telephone network. That's the analogy that was used by Judge Jordan. I think it's an analogy that works very well. Well, it's not even an analogy and this is something that totally puzzles me about this whole case. The claims are very clear. What is claimed is a system for transmitting video programs to remote locations over a switched telephone network. They don't use a switched telephone network. They do not, Your Honor. You don't, that is. You don't use a switched telephone, isn't that right? We don't use a switched telephone network. We use the internet. Why wasn't that the issue on which the case would turn? I mean, I don't even find that mentioned. Why doesn't the case simply turn on the fact that the claim has nothing to do with the mechanism, with the accused device or whatever you want to call it, the accused activity? Yes, Your Honor. We specifically requested that the terminology be interpreted to be a switched telephone network. The court below declined to make that interpretation because it found as positive the question of the interpretation of the word in the issue. So it was not resolved, but it is mentioned in the appendix. There is a section in the appendix which states all of our proposed constructions and that's one of the constructions we proposed. But the court never reached it. Never reached it. Chose instead the initiating connection language. It did. It's not even really a construction you're proposing. You're just repeating the words in the claim itself. Switched telephone system, that's the language right in the claim, isn't it? I think that the language in the claim is, it doesn't say, it says over a switched telephone network. Switched telephone network, yeah. And we argued that that was not the internet. I mean, a telephone network is a telephone network. You don't have to construe it. Everybody knows that telephones are different from walkie-talkies or other kinds of bilateral communication. Absolutely correct. And if you read further in claim one, it talks about a distribution interface connected said central data facility and to the telephone network, wherein said distribution interface initiates connections over the telephone network. This is very puzzling. Your Honor, it was the choice of the district judge. We presented both of those issues to the district judge, and he found the other issue to be positive. I don't know why he didn't rule on one versus the other. But let me see if I understand. Maybe I don't understand the importance of the reference to switched telephone network. But suppose I have dial-up. I still am in the dark ages. Yes, sir. And I use my dial-up system with your software to order a movie. Aren't I using in the terms used in the patent a switched telephone network, in part at least, to order that movie? The MovieLink system will reject a dial-up call because it's simply too slow. Well, okay. But that's because it will take three days to download the movie. I understand. But at least in theory, if you didn't put in a filter that said forget it if you've got dial-up, this would work similarly if it's used on a dial-up system, right? I mean, there's nothing fundamentally different about your system from what it would be if it were used in dial-up or any other telephone-based system, right? Theoretically, you could use a dial-up system. It's just not what's used. Okay. But with regard to the telephone analogy, one way to think about the TCP versus HTTP connections is if you place the call, but you don't say anything, you could think of that as a TCP type connection. And then when you speak, when you make the HTTP get request, because that's what the user's computer does, it makes the HTTP get request, it asks for a piece of information. And then the server, in this case the CDS, will send back the movie. And the TCP connection is always in existence, and it only stops being in existence when the HTTP communication ceases. Starts or stops? When the HTTP connection starts or stops, the TCP is cut off? What happens is that the user's computer will initiate the TCP connection, and then there's this three-way handshake to represent that the TCP connection exists. Then the HTTP request will be made, and then the HTTP response will be the movie. And meanwhile, what's happened to the earlier connection? Has it ceased or does it continue? If what you mean by the earlier connection, which is the original, after the user pushes the press download button, what is set up is a first TCP connection. That TCP connection is with the CDR, the router. There's an HTTP request at that point in time, and the request will be made for the movie. When you say there is an HTTP request? The user's computer will send out an HTTP request, and it will ask for the movie. The router will, instead of returning the movie, say, call someplace else. So that's something coming back to the consumer. In response to that HTTP, it's what's called an HTTP redirect. And then the user's computer will initiate another TCP connection. This time the connection is to the server, the CDS. And then once the TCP connection is set up to that server, another HTTP request is sent. It's the same request. It's sending the movie. It's sent by the consumer. By the user's computer. And in response to that request, now the movie is downloaded. When the TCP connection with the server is established, what is it that the server does? This is all part of a series of handshakes, really. I guess that's the terminology. That's what they call a TCP connection. A TCP is a handshake just to make sure we've got it. Okay, now once we've got that connection, what is it that the server does next? It waits. So the consumer has the URL for the server and connects and sends a request to the server, right? Yeah, uses the URL. Right, all right. Makes the TCP connection. That's specific to that server. Specific to that server. And then that's a TCP request, in effect, for a connection? No, a TCP connection. That's like the call being placed. Right, okay. Not the change set. All right. Once the call is in place... Okay, now, slowly for me here. That TCP connection goes from the consumer to the server. Now, what does the server do in response to that signal? Absolutely nothing. So how does the consumer's computer know that that communication link has been established? That's why it's a three-way handshake. Well, that's what I thought. I mean, something comes back, right? Yeah, the TCP connection is initiated by the user's computer. It is acknowledged. Okay, that's what I was looking for. There's an acknowledgement. So something comes back from the server. Right. So that the user's computer knows that a communication is... Right, that's why they call it three-way. User's computer initiates the TCP. Right. Acknowledged, acknowledged. Okay, so there's a second acknowledgement. That's why we know that that line is in existence. Once that occurs, then the HTTP GET request is made by the computer. Then it sends a message saying, here's what I want.  I want this piece of information. And then the server says, here's the move. Now, I think I understand all that. And I think that I had that down. But my question is, after the second acknowledgement is sent, that is to say, part three of the three-part handshake, does the server send anything back to the user's computer? Or does the user's computer simply send the acknowledgement and then immediately, without any further activity on the part of the server, does the user's computer then send the request for the download? It's the latter. Because the server doesn't know what to do. It has to be asked a specific question. But I guess my question is, how does it... Then, for purposes of the consumer, the consumer doesn't need to have any more information from the server regarding the server's accessibility after having received the first of the two acknowledgements? All the user's computer needs is the URL. That's the location of the server. Everything else... But it also has to establish that the URL is available. There has to be the first acknowledgement, at least, right? There's various things that the user's computer is doing with regard to... And that's what the movie link manager... That's the software that resides on the user's computer. Various things are going on with that. But then it makes the request. The server is not communicating any information back to the user's computer. The user's computer already has that software that resides on it that it knows what to do. Once the TCP connection is established, the user's computer knows what to do. It knows to make the request for the movie. But there is an acknowledgement. Well, there's an acknowledgement. When you say there's no information going back, there's that. It may not be data, but it's information. That's right. I mean, the TCP connection is initiated by the user's computer. The acknowledgement occurs. It sends back the acknowledgement. You keep saying server as a singular in your discussion with Judge Bryson, but actually there's two different servers, aren't there? There's the initial web server that the URL connection goes to, and that sends the get signal back to the consumer. No, it sends a redirect back. Redirect, rather. The redirect, I'm sorry. It says the redirect. And then the consumer's computer sends the new information to this other server where the movie sits. It says, get me my movie. That's when the get signal goes over. Is that correct? The get signal goes to both of them. I think of it, when you say two servers, I think of it as CDR and CDS. And the way I think of it, to make it simpler to understand, is that the first one's a router and the second one's a server. It's CD and router. They're both, in fact, servers. But there's a TCP connection. They call it a server. I'm trying to make sure we're all talking about the same thing. We're talking about the CDR. Yes. The CDR is the router. When you say server, you're not talking about the router. I'm talking about what has ultimately been selected. No, he was talking about the router as a server initially. When you were having that conversation with Judge Price and some of the things you said the server was doing was actually what you're now calling the router. Not correct, Your Honor. Not correct. But the same thing goes on. There are, in fact, two connections here. There's a connection that's initiated with the server. It's a TCP connection. And then once that TCP connection is established with that first server, which I call the router, the CDR, there's an HTTP GET request. And then it responds with an HTTP redirect. That connection comes to an end. Why? Why do you say it comes to an end? It just is. There's no disagreement in the, in fact... There's a disconnect right there? Absolutely. Okay. All right, go ahead. I won't argue with you. In 1907.33, in the appendix, a plaintiff's counsel... So a new connection is initiated now with the, what is it called, the CDS. That's correct. Now another TCP signal is sent to the CDS. Now I know what the correct URL is. The server. That server. That TCP connection is then in place. Then the HTTP GET request occurs again. So, in fact, the user's computer sends an HTTP GET request to the original CDR. It finds out the correct URL in response to that. Then it initiates another connection with the CDS. And then it gets to the movie. All right. Now the game in this particular lawsuit is to decide what the claim means when it says distribution interface initiates connections. Isn't that right? Initiating a connection over a telephone network to a remote receiving unit previously associated with the pre-registered requester. Isn't the whole game that we're involved in here, don't call it a game, whatever you want to call it, deciding what is meant by distribution interface initiates connection? Effectively, yes. That's what the initiates is. Your question is which of these multiple connections is the one we're going to label the initiates connection. Isn't that right? You're arguing that the initiating connection is from the consumer, the user. The very first connection. Our position was, and it was agreed by the district court, is when we push the download button on the user's computer, that sets up the first TCP connection with the CDI. And that's what the claim means by initiates connection, according to you. According to me. But we also say that if what you want to do, because the claim doesn't anticipate anything like this, is if you want to say there's a second connection, because there is clearly a break between the connection. Your second connection is when the user then talks to the CDS. Right. But we initiate, the user initiates that connection just as well. So whether we initiate one connection that starts the download process or two connections, it's all the same. Well, Mr. Olson, here's the problem I think we're all wrestling with, is you pick two pieces of this drama to call your initiating connection, and they pick a different two pieces. How are we supposed to know which of all these multiple? Do you have to belong to the Flat Earth Society in order to believe all this is going on? Because what the district judge stated was that as a result of the file history, and focused heavily on the file history, that there was an aspect of control. And who had some aspect of control over the download process? Does the user have control over the download process like the prior Cohen reference? Or does the distribution interface have control like was argued clearly in the prosecution history? And what the court stated was no matter how you slice this, the control is in the user. The user controls when the download occurs, and the download will go back to the user's computer. There isn't what was argued in the file history. The distribution interface controls when it occurs, and indeed it can control where it occurs because it can be sent to a remote location. You can call on your car phone on your way home and say download a movie, and what they argued by analogy was that that movie would be residing on the user's computer or whatever the remote location was when you got home. The movie link system doesn't provide that. Why wasn't this phone call from the car phone initiating a connection under this? Because that goes not to the distribution interface, that's the request interface. That's simply the request for the movie. When we're talking about the distribution interface, we're talking about the downloading. We can't confuse the request for the movie, simply I want to order X movie, with the download process, and it's the download process that is initiated by the distribution interface in this pattern. In the movie link system, the download process is initiated and controlled by the user. That's the second loop is what you're saying. When you push the download button and it talks to the CDS, the content delivery server, that's what you're saying is the parallel to what they're talking about. No, I'm not, Your Honor, and this is an important point. Because the request for the movie is the ordering of the movie, with what movie do I want and all that, is upstream. It's earlier in time. That all deals with the request interface situation, which isn't discussed. Both of these connections that are with the CDR and the CDS are part of what they call the distribution interface. It is the downloading of the movie. The movie has already been ordered. The question is, when do you download it? The user pushes the button and says, now is when I want it, and it comes back to that computer. Well, that was the point I thought I was making, which is when you push the download button, I want it now, you're talking to the CDS, aren't you? You first talk to the CDR. CDR first. Well, you get all that information first, right? But I thought the crux of what you just told us was the critical point for what you want to call the initial contact for downloading is when you push the download button and you're talking to the CDS. Do I misunderstand you? The polling from the standpoint is when you push the download, it's as if you make a telephone call to Judge Bryson and say, would you tell me what time the golf match is? And Judge Bryson says, I don't know. You have to call Judge Michel, and the CDS would be your second call to Judge Michel when you say, what time is the golf match? Thank you. Mr. Vell? Yes, I'll keep this brief, Your Honors. I just want to point out that if you would like to refer to Figure 7 in the patent, it sets out some of what you were just discussing, which is it's essentially a flow chart in the patent, and you'll see that there are what we've sort of been referring to as two connections at block. Again, this is at Figure 7 of the patent. The first block that says connect to Central System 110, that's when the user initially requests a movie, and you see that at step 112. And then if that movie is available, then you can see at 116 there is essentially the second connection, and that's really what is at issue here, which is connecting to the receiver. So that's where this distribution interface connects to or initiates the connection to the user's computer. And to just briefly touch on what we talked about earlier, essentially there are two connections with regard to that second connection. There is an underlying TCP connection, and then there's the HTTP session that we talked about that is above that TCP connection,  So it's really a fact question as to who initiates those connections, and that's why we believe this should be reversed. Now I understand you to be saying that we should conclude that the initiation is made by the server because the server instructs the user's computer to call up the server that actually has the movie ready to transmit, and that the user's computer can do nothing but follow that instruction. That's correct. Is that right? So you're saying initiates is a function of who's giving orders that can't be ignored, and you're saying it's our distribution server that's giving the instruction that can't be ignored, so we're in control at the server level, so we're really initiating it even though it's the user's computer following those unalterable commands that dials up the server that has the movie ready to send. That is exactly correct. And then in addition to that, if that is not what initiating connections really means and really is directed to, then the HTTP session is a physical connection that is initiated by the CDS back to the user's computer, and it is also done at the request of the user's computer. When the user's computer sends the HTTP get command to the CDS to get the movie, then the HTTP session is programmed to create that connection, that HTTP session. And so either way, there is clearly here a connection that is initiated by the CDS server over which that movie is downloaded, and that's why we believe there is a fact issue here that should be resolved by a jury. As a matter of curiosity on the procedure, did Judge Jordan enjoy live argument from counsel for the two parties the way we have? There was a live argument, but it was both claim construction and summary judgment all rolled into one. But only attorney argument? Yes. All the input by the experts was on paper? That's correct. Okay. Thank you very much. Thank you. Take the case under advisement and thank both counsel.